UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| STEVEN J., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-04006-SLD-JEH |
| | ) | |
| NANCY BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff Steven J. filed an application for disability insurance benefits. The

Commissioner of the Social Security Administration ("the Commissioner") denied his

application, and Steven seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

*See* Compl., ECF No. 1. Before the Court are Steven's Motion for Summary Judgment, ECF No.

11, the Commissioner's Motion for Summary Affirmance, ECF No. 15, and United States

Magistrate Judge Jonathan Hawley's Report and Recommendation ("R&R"), ECF No. 17, which

recommends denying Steven's motion and granting the Commissioner's.

## I.      Report and Recommendation

When a magistrate judge considers a pretrial matter dispositive of a party's claim or

defense, he must enter a recommended disposition. Fed. R. Civ. P. 72(b)(1). Parties may object

within fourteen days of being served with a copy of the recommended disposition. *Id.* 72(b)(2).

The district judge considers de novo the portions of the recommended disposition that were

properly objected to, and may accept, reject, or modify the recommended disposition, or return it

to the magistrate judge for further proceedings. *Id.* 72(b)(3). If no objection, or only partial

objection, is made, the district judge reviews the unobjected portions of the recommendation for

clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

1

The R&R sets forth the relevant procedural background, including an overview of the administrative law judge's ("ALJ") decision—which became the Commissioner's decision when the Appeals Council denied Steven's request for review, *see Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009)—so the Court will not repeat that discussion here. R&R 1–6. Judge Hawley laid out the arguments Steven made in his Motion for Summary Judgment, *id.* at 6, but primarily addressed the Commissioner's arguments because they were "clearly framed," *id.* at 8. Essentially, Judge Hawley assessed the ALJ's decision at each step—other than the first[1]—of the five-step evaluative process an ALJ must follow to determine whether a claimant has an impairment that renders him unable to engage in any substantial gainful employment. *See* 20 C.F.R. § 404.1520(a)(4) (indicating that an ALJ considers, at step one, work activity; at step two, the medical severity of impairments; at step three, whether an impairment meets or equals a presumptive disability; at step four, residual functional capacity ("RFC") and past work; and at step five, RFC and other work in the economy). Judge Hawley recommends upholding the Commissioner's decision because the ALJ's decision was adequately supported and explained at each step. *See* R&R 9–14.

Steven filed an objection. ECF No. 18. His arguments are not clearly articulated. He indicates that he has had eight seizures in four and a half years, has been told by doctors he cannot work with heavy machinery, and that he takes naps and does not use the stairs. *Id.* at 1. He complains that the ALJ unreasonably found that his ability to eat, shower, and use the restroom means he can do light duty work. *Id.* He states that he becomes dizzy and has to rest when, for example, shoveling a patch of sidewalk. *Id.* He explains that searching for work has been difficult at his age because he has to explain that he needs to take breaks, cannot lift more

---

[1] He does not address step one, presumably because Steven presented no argument regarding his past work activity.

than thirty pounds, and his mental and physical abilities are limited. *Id.* Moreover, he argues that he cannot get a job in which he would make enough money to pay for his medication. *Id.* at 2. He also takes issue with the finding that he failed to take his medication, explaining that he instead ran out due to his inability to pay for it. *Id.* Lastly, he indicates that he has had more seizures, including one as recently as July 29, 2018, and that it would risk others' lives for him to work with heavy machinery again. *Id.*

Although the Local Rules require a party to "specifically identify the portions of the report and recommendation to which objection is made and the basis for the objection," CDIL-LR 72.2(B), the Court will construe Steven's objection liberally in light of his pro se status, *see Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018). The Court finds that Steven has objected to the consideration given to the following: his symptoms and the side effects of his medication, his use of medication, his daily activities, his ability to find work, his doctor's opinion that he cannot work with heavy machinery, and his worsening condition. The Court will consider these issues de novo.

## II.     Analysis

The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standard and whether substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted). The ALJ does not have "to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). On review, the court cannot reweigh the

evidence, decide questions of credibility, or substitute its own judgment, but must "nonetheless conduct a critical review of the evidence." *McKinzey*, 641 F.3d at 889.

### a. Symptoms and Side Effects

Steven argues that the symptoms of his seizure disorder and the side effects from his medication impair his ability to work. Objection 1. The ALJ considered Steven's testimony from the hearing that he gets lightheaded standing and walking, that he has needed to rest while doing yard work, and that he naps every day for one to two hours after taking his medication. R. 24.[2] But the ALJ found this testimony inconsistent with the medical records because "[a]t most of his visits, he denied any side effects at all and stated he had no drowsiness or dizziness." R. 27. As the ALJ noted, when Steven did report drowsiness in October 2016, he stated it was manageable. *Id.* It was appropriate for the ALJ to consider whether Steven reported symptoms or side effects to his medical providers when determining the extent to which such symptoms or side effects limit his ability to work. *See* Social Security Ruling ("SSR") 16-3p,[3] 2017 WL 5180304, at *4 (Oct. 25, 2017) ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; [and] an individual's statements about the intensity, persistence, and limiting effects of symptoms . . . ."); *id.* at *7 ("Very often, the individual has provided . . . information [regarding the character and description of symptoms] to the medical source, and the information may be compared with the individual's other statements in the case record."). Moreover, Steven points to no line of evidence that the ALJ ignored which would have supported a finding that his

---

[2] The administrative record can be found at ECF No. 8. Citations to the record take the form R. __.

[3] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (citations and quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

symptoms and side effects are as severe as he claims. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (explaining that an ALJ cannot ignore evidence that would point to a finding of disability). The Court finds no error in the ALJ's consideration of Steven's symptoms and the side effects from his medication.

### b. Medication

The ALJ noted at various points in his decision that Steven experienced a seizure in September 2014 after he did not take his medication. *E.g.*, R. 27. Steven argues that it is "wrong" to state that he "did not take [his] medicine." Objection 2. He explains that he ran out of medication when he had no money "and within 4 days [he] had another seizure." *Id.* The Court sees no factual difference between what Steven says occurred and what the ALJ wrote— ultimately, Steven agrees that he ran out of medication and could not take it, and then had a seizure. Steven might be suggesting that the ALJ held this against him, which the ALJ would not be permitted to do without first exploring Steven's reasons for failing to take the medication, *see Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). But there is nothing to suggest that the ALJ drew a negative inference about the severity of Steven's symptoms from his failure to take his medication. Rather, the fact that a seizure followed a time when he was not taking his medication supported the finding that his epilepsy was well-controlled with medication. *See* R. 27 ("The neurological records show, since starting medication, the claimant has experienced only three seizures . . . one of which was attributed to the claimant's failure to take his seizure medication."). The ALJ did not err in considering this evidence.

### c. Daily Activities

Steven complains that the ALJ relied on his ability to eat, shower, and use the restroom to find that he could do light duty work. Objection 1. It is proper for an ALJ to consider an

individual's statement about his ability to perform daily activities in determining the intensity, persistence, and limiting effects of his symptoms. *See* SSR 16-3P, 2017 WL 5180304, at *6. But although the ALJ asked about these activities at the hearing, R. 48, he did not mention them in his decision. He did not rely on those activities to find that Steven could perform light work.

### d. Ability to Find a Job

Steven next claims that he has had trouble finding a job at his age and that he cannot find a job that would pay him enough to afford his medication. Objection 1–2. But whether a plaintiff has experienced difficulty trying to find a job is not at issue in social security benefits cases. *See* 20 C.F.R. § 404.1566(a) (noting that, for purposes of determining whether a plaintiff is disabled, whether there are jobs available in the plaintiff's local area and whether he "would be hired if [he] applied for work" do not matter). The question is whether he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In other words, the only question is whether he has any severe impairments that prevent him from working. *See* 20 C.F.R. § 404.1505(a). Steven also suggests that if he were to get a job, it would be something he has done in the past like using machinery or driving trucks, but that this would risk his and other people's lives. Objection 2. The Court reads this to mean that Steven does not want to work in a field, such as fast food, that would not involve exposure to workplace hazards like heavy machinery. *See* R. 29 (noting that the vocational expert testified that someone with Steven's RFC could be a fast food worker or cashier). But although Steven might choose not working at all over working in a new field, that does not mean he is unable to engage in any substantial gainful activity. *Cf.* 20 C.F.R. § 404.1566(c)(8) (noting that an individual will be considered not disabled if it would be

possible to do work that exists in the national economy but he remains unemployed because he "do[es] not wish to do a particular type of work").

### e. Worsening Condition

Lastly, Steven faults the Court for not considering that he has had more seizures since the ALJ's decision. Objection 2. But it would be improper for the Court to consider evidence of seizures occurring after the ALJ's decision. "A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Schmidt v. Barnhart*, 395 F.3d 737, 741–42 (7th Cir. 2005) (quoting 42 U.S.C. § 405(g)). In other words, for the Court to consider Steven's new evidence, he would have to show that it was material and that he had a good reason for failing to bring it up earlier. But Steven's evidence would only be material if it told the Court something about his condition during the time the Commissioner was considering his application for benefits. *See id.* at 742. Evidence that postdates the ALJ's hearing that speaks to a plaintiff's current condition, rather than his condition during the time his application was pending before the Social Security Administration "do[es] not meet the standard for new and material evidence." *Id.* If Steven believes his condition has worsened since he first applied for benefits, he must submit a new application. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

Steven's arguments do not persuade the Court that the ALJ applied an erroneous legal standard or that the ALJ's decision is not supported by substantial evidence. The Court has reviewed the rest of the R&R for clear error and found none.

**III.    Conclusion**

Accordingly, the Report and Recommendation, ECF No. 17, is ADOPTED.  Plaintiff Steven J.'s Motion for Summary Judgment, ECF No. 11, is DENIED and the Commissioner's Motion for Summary Affirmance, ECF No. 15, is GRANTED.  The Clerk is directed to enter judgment and close the case.

Entered this 19th day of March, 2019.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
